UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

SANJAY BHANU,
    Plaintiff

vs.      :     CIVIL NO. 1:11-CV-1160

SNYDERS OF HANOVER,
    Defendant

*M E M O R A N D U M*

*I.*      *Introduction*

    We are considering a motion for summary judgment filed by Defendant, Snyders of Hanover. This matter relates to the employment and subsequent termination of Plaintiff, Sanjay Bhanu, from Snyders. Plaintiff brought the instant lawsuit alleging national origin discrimination, hostile work environment, and retaliation. Defendant argues that Plaintiff has failed to provide sufficient evidence to establish any of his claims. We will examine the motion under the well-established standard. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d. Cir. 2008). We "must view all evidence and draw all inferences in the light most favorable to the non-moving party, and may affirm a grant of summary judgment only if no reasonable juror could find for the non-movant." Id.

*II.        Background*

Defendant manufactures and distributes snack food products and maintains a manufacturing facility in Hanover, PA. In September 2001, Plaintiff was hired by Defendant as a machine operator. Upon beginning his employment, Plaintiff received a copy of Defendant's Employee Handbook. The handbook set forth Defendant's harassment policy, which prohibits harassment and encourages the filing of complaints, guaranteeing non-retaliation and confidentiality. Also in the handbook was an explanation of Defendant's progressive discipline policy, which provides four levels of offenses and corresponding discipline. Group 1 offenses can result in discharge from employment. Insubordination and sleeping on the job are both listed as Group 1 violations. Also listed in this group is altering the speed of a machine without supervisory approval "when typically required."

Kae Sterner was the Packaging Production Manager during the time of Plaintiff's employment. Travis Wolf was Plaintiff's direct supervisor at all times relevant to the instant action. Sterner was Wolf's supervisor. During his employment, Plaintiff received numerous disciplinary warnings. In June 2008, Defendant terminated Plaintiff for sleeping on the job.[1] Plaintiff appealed his termination to the Vice President of

---

[1] Plaintiff contends that he was not sleeping on the job and only had his eyes closed. He explains that while on the job, he came in contact with dust and salt, requiring his eyes to be washed. Following the eye wash, Plaintiff asserts that he would close his eyes periodically for several minutes to ease pain and irritation.

Human Resources, John Bartman, who reinstated Plaintiff.  Following the reinstatement, Wolf gave Plaintiff positive work evaluations in 2008 and 2009.

In June 2009, Plaintiff complained to his supervisors that a co-worker, Ben Bish, threw a step-stool at him.  Sterner investigated the incident and determined that Bish did not throw the stool at Plaintiff but did commit an unsafe act by throwing it toward Plaintiff.  Bish was suspended for a week due to the incident.

In his deposition, Plaintiff testified that during his employment, Wolf gave him "problems," did not listen to him, and wrote him up for infractions of policies that were not typically enforced.  Plaintiff also asserts that Wolf would stand with other employees and laugh at him.  After a workplace incident, Plaintiff asked Wolf to take him to the nurse to have his eyes flushed.  Wolf offered to urinate in his eyes.  Wolf never said anything to Plaintiff about his ancestry or ethnicity.  Plaintiff made a number of complaints about Wolf to Sterner, but never told Sterner that Wolf's actions were discriminatory.

On November 24, 2009, Plaintiff was working on two packing machines. One machine was designated as the primary machine and the other was used to package excess product.  Any product not packaged by either machine ran into a runoff tub.  Once the tub became full, Plaintiff was required to put the product back on the packaging line. The standard machine speed, with two packers, is 50 bags per minute ("bpm"), meaning each packer would pack 25 bags per minute.  As the packaging began, Wolf noticed that one of the machines was set at 60 bpm.  He instructed Plaintiff to

reduce the speed to 50 bpm. At some point during the shift, the second packaging machine malfunctioned, resulting in a decrease of product being packaged and an increase of product in the runoff tub. To prevent excess product from entering the runoff tub, Plaintiff increased the speed on the primary machine to 60 bpm, requiring each packer to pack 30 bags per minute. Plaintiff did not tell Wolf that he had increased the speed of the machine, and the parties disagree about whether he was required to do so. Wolf later discovered that Plaintiff increased the machine's speed, and suspended Plaintiff for insubordination and changing machine speeds without supervisory approval. After investigating the incident, Sterner made the decision to terminate Plaintiff. Plaintiff appealed the termination, but it was upheld by Bartman.

Plaintiff filed complaints with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC"). In September 2010, the PHRC issued findings, and on March 21, 2011, the EEOC adopted the state's findings and dismissed the charges. On June 11, 2011, Plaintiff filed the instant action. He alleges that Defendant terminated his employment because of his Indian ancestry, in violation of Title VII of the Civil Rights Act of 1964. Plaintiff also alleges hostile work environment and retaliation claims.

*A. Affidavits of Bharat Pandey and Shashi Dilawri*

In support of his claims, Plaintiff alleges that he was one of three Indian employees that experienced discriminatory treatment. Plaintiff provides the affidavit of Bharat Pandey, who explains

> One day when I was on break, Chandrika was sitting with us in the breakroom (sic) she was crying and said, Ben threw a box at her because she complained about a packing problem. She was pregnant at that time and was afraid of Ben's treatment . . . Later same situation happened with another Indian worker Harish. Ben threw a box at Harish.

(Doc. 30-2). Plaintiff also submitted the affidavit of Shashi Dilawri, the wife of Harish Dilawri, an employee of Defendant. The affidavit provided

> My husband will come home and sometimes complain that his supervisor Travis and some co-workers would give him a hard time at Snyders. One day he complained that Operator Ben got angry at him and throw (sic) a box and bags at him and verbally abused him. My husband was very upset about how they treated him. He also said that when he complained to the supervisor Travis, no action was taken.

(Doc. 30-3).

Defendant argues that we should strike the affidavits of Pandey and Dilawri, because they fail to meet the requirements of Federal Rule of Civil Procedure 56(c)(4). This rule provides "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). Defendant contends that the affidavits of Pandey and Dilawri contain hearsay and were not made on personal knowledge. We agree that the affidavits contain hearsay. However, the Third Circuit has stated that "hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony." J.F. Feeser, Inc. v. Serv-A-Portion, 909 F.2d 1524, 1542 (3d Cir. 1990). Thus, the hearsay within the

affidavits may be considered if Plaintiff could present such evidence through the direct testimony of Chandrika and Harish Dilawri.

Whether this testimony may be presented turns on whether Plaintiff may call these witnesses at trial, despite his failure to disclose their identities pursuant to Rule 26(a)(1).[2]  Rule 37(c) provides

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1).  To determine whether the failure to identify the witnesses was substantially justified or harmless, we examine the following factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or wilfulness in failing to comply with the district court's order.

Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997).

*1. Testimony of Harish Dilawri*

Although Defendant suffered some prejudice as a result of the affidavits of Pandey and Dilawri, the facts concerning Harish Dilawri were not a surprise.  Plaintiff's complaint describes an incident involving "Harish," an employee of Defendant.  Although

---

[2] Plaintiff did not name Harish Dilawri, but he did list "Chandrika (last name unknown)" pursuant to Rule 26(a)(1).  (Doc. 11, at 7).

the complaint only mentioned his first name, Defendant, as his employer, had sufficient notice about his identity and the incident affecting the present action.  This limits the prejudice suffered by Defendant.  There is no evidence of bad faith or willfulness in Plaintiff's failing to comply with the discovery requirements.  While the waiver of the rule against calling unlisted witnesses would disrupt the efficiency of the trial, the majority of factors weigh in favor of allowing Harish's testimony.  For the same reasons, we find that the affidavits of Pandey and Shashi Dilawri should not be excluded from consideration of the pending summary judgment motion even though Plaintiff failed to identify them pursuant to Rule 26(a)(1).

### 2. *Testimony of Chandrika*

We find that the factors weigh against allowing the testimony of Chandrika at trial.  Chandrika, according to Plaintiff, was a temporary employee at Defendant's manufacturing plant.  Plaintiff's complaint refers to "Chandrika" and he named "Chandrika (last name unknown)" pursuant to Rule 26(a)(1).  Plaintiff's opposition brief names "Chandrika Patel" as the individual referred to in the complaint and discovery.  Defendant has no record of employing a "Chandrika Patel" and had no means to identify her prior to Plaintiff filing his opposition brief.  Thus, the prejudice and surprise of allowing Chandrika's testimony is greater than that of allowing Harish's testimony.  Defendant had no means to cure the prejudice and surprise.  The waiver of the rule against calling unlisted witnesses would certainly disrupt the efficiency of the trial.  Although there is no evidence of bad faith or willfulness on Plaintiff's part, the majority of

factors weigh in favor of precluding testimony from Chandrika at trial.  Because she may not testify at trial, Plaintiff may not offer hearsay in which she is the out-of-court declarant.  See J.F. Feeser, 909 F.2d at 1542 (allowing hearsay to be considered in opposition of summary judgment if the out-of-court declarant may be presented at trial).  Thus, we will not consider the portions of Pandey's or Plaintiff's affidavits discussing Chandrika, because they do not conform with Rule 56(c)(4).  See FED. R. CIV. P. 56(c)(4) (requiring affidavits be made on personal knowledge and set out facts that would be admissible at trial).

### B. Plaintiff's Affidavit

In addition to the affidavits of Pandey and Dilawri, Plaintiff attached his own affidavit in support of his brief.  Defendant argues that Plaintiff's affidavit is "replete with hearsay, improper opinion testimony, speculation as to Defendant's motives and conclusory allegations as to ultimate facts."  (Doc. 33, at 12).  While we agree that portions of the affidavit contain testimony that does not conform to the requirements of Rule 56(c)(4), we do not find that the circumstances require us to strike the entire

affidavit.[3] The remaining portions of Plaintiff's affidavit demonstrate there are no issues of material fact that preclude summary judgment.

*III.        Discussion*

    *A. Disparate Treatment*

To establish a *prima facie* case of discrimination under Title VII, Plaintiff must establish (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances that could give rise to the inference of discrimination.[4] Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). Once the plaintiff has established the *prima facie* case, the defendant must present a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S.

---

[3] Paragraphs 13 and 14 of Plaintiff's affidavit discuss the employment of Harish Dilawri. Plaintiff asserts that Wolf fired Dilawri for abandoning his job even though he went home sick. Plaintiff's deposition testimony makes clear that Plaintiff does not have personal knowledge of the reasons for the termination. See doc. 33-4, at 13. Because this portions of Plaintiff's affidavit regarding Dilawri's termination were not made pursuant to Rule 56(c)(4), we will not consider this evidence to resolve the instant motion. See FED. R. CIV. P. 56(c)(4) (requiring affidavits be made on personal knowledge).
    For the reasons set forth, we will not consider paragraphs 11 and 12 of Plaintiff's affidavit discussing incidents involving "Chandrika."

[4] Plaintiff's claims under 42 U.S.C. 1981 and the PHRA are governed by the same standards as those required by Title VII. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (finding section 1981 and PHRA claims are governed by the same standards required by Title VII).

at 802-3. If a legitimate reason is given by the employer, then the burden shifts back to the plaintiff to demonstrate that the employer's reason is pretextual. Id.

Defendant argues that Plaintiff has failed to establish a *prima facie* case because he has not demonstrated the requisite inference of discrimination. "The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Sarullo v. United States Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (citations omitted). Even in the light most favorable to Plaintiff, the evidence in the record does not demonstrate an inference of discrimination. The decision to terminate Plaintiff's employment was made by Sterner and upheld by Bartman. The only evidence Plaintiff offers to show that these decision-makers discriminated against him is their failure to discharge Bish after he committed what Plaintiff claims is a similar act to the one that caused his termination. However, the Third Circuit has instructed that "evidence of differential treatment of 'a single member of the non-protected class is insufficient to give rise to an inference of discrimination.'" Pivirotto v. Innovative Sys., 191 F.3d 344, 359 (3d Cir. 1999). Plaintiff has not provided sufficient evidence to establish a *prima facie* case of disparate treatment.

We also agree with Defendant that Plaintiff has not demonstrated that the reason for Plaintiff's termination was pretextual. Pretext is determined by examining the totality of the evidence. Bray v. Marriott Hotels, 110 F.3d 986, 991 (3d Cir. 1997). To show pretext, "the plaintiff must point to some evidence, direct or circumstantial, from

which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). To meet the first prong, the "nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Jones, 198 F.3d at 413. To meet the second prong, a plaintiff may provide evidence that shows the employer previously discriminated against the plaintiff or other persons within the plaintiff's protected class, or the employer treated others, similarly situated, outside of the protected class more favorably. Id.

Defendant's explanation for Plaintiff's termination was that he increased the speed of his machine without notifying his supervisor, after his supervisor had specifically directed him to set the machine at a lower speed. Plaintiff admits his supervisor directed him to lower the speed of the machine, and he admits to later increasing the speed of the machine. Plaintiff claims that he did not need supervisory approval to increase the speed, but this assertion is unsupported.[5] Plaintiff's termination followed numerous

---

[5] Plaintiff provided the affidavit of William C. Walker, a former employee of Defendant. Walker was employed between 2001 and 2002 and asserts at that time the standard practice was to increase the speed of a machine when another machine broke down. However, we will not consider Walker's affidavit because the information within the affidavit is not relevant evidence that would be admissible at trial. Walker was employed by Defendant in 2001 and 2002, but Plaintiff's termination occurred seven years later, in 2009. The standard practice in 2001-2002 is not relevant to the

11

disciplinary warnings[6] and his earlier termination for sleeping on the job.  Plaintiff has not carried his burden, because nothing in the record demonstrates weaknesses, implausibilities, or inconsistencies in Defendant's proffered reason.  Plaintiff attempts to meet the second prong by showing preferential treatment to Bish, who Plaintiff argues committed a similar act but was suspended instead of terminated.  Not only has Plaintiff failed to provide sufficient evidence to support his assertion that Bish is similarly situated, he can not rely on the treatment of a single member of the non-protected class to demonstrate pretext.  See Simpson v. Kay Jewelers, 142 F.3d 639, 646 (finding that when considering comparators "the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action"); see also id. (explaining a plaintiff "can not pick and choose a person she perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than she.").  Without evidence to show that Defendant's legitimate, non-discriminatory reason for Plaintiff's termination was pretextual, this claim fails.

### B. Hostile Work Environment

Plaintiff also brings a hostile work environment claim.  To establish this claim, Plaintiff must show "(1) that he or she suffered intentional discrimination because

---

present action.  See FED. R. EVID. 402.

[6] Defendant provided evidence of twenty-six disciplinary warnings during Plaintiff's eight years at the company.

of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996). To determine whether the environment is hostile or abusive, we look at all of the circumstances and consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

Plaintiff asserts that his supervisor, Wolf, gave him "problems," did not listen to him, wrote him up for incidents that did not occur, and would stand with other employees and laugh at him. Plaintiff alleges that when he requested to have his eyes treated after a work-related injury, Wolf offered to urinate in them. Bish, Plaintiff's co-worker, threw a step-stool toward or at Plaintiff. In a separate incident, Bish threw a box at another Indian employee, Harish Dilawri. Plaintiff has not shown that the Wolf's or Bish's conduct occurred *because of* his national origin. We also find that Plaintiff has not demonstrated it was pervasive and regular. In 2008 and 2009, Wolf gave Plaintiff positive work reviews, demonstrating that these actions did not interfere with Plaintiff's work performance. Plaintiff does not describe the frequency of the conduct and cites a few isolated incidents. He attempts to portray the conduct of Wolf and Bish as physically

threatening and humiliating, but Wolf's distasteful comment was a single, isolated occurrence and Bish's actions did not create an atmosphere of harassment.

Defendant also argues that Plaintiff has failed to establish the final element of his claim, the existence of respondeat superior liability. An employer is strictly liable when supervisors create a hostile work environment. When co-workers create the environment, the employer is liable if it was "negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment." Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 (3d Cir. 1997). Plaintiff has not provided evidence to show that any of his supervisors created a hostile work environment. To the extent Plaintiff argues that Bish did so, he has not demonstrated that Defendant was negligent or reckless in failing to train, discipline, or take remedial action upon receiving notice of harassment. When Plaintiff complained to his supervisor about Bish, Sterner suspended Bish for a week. Without more, Plaintiff has not established the existence of respondeat superior liability and his claim fails.

*C. Retaliation*

To establish a claim of retaliation, Plaintiff must show (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006).

Defendant argues that Plaintiff did not demonstrate he was engaged in protected activity. Complaints about "unfair treatment in general" and "dissatisfaction"

14

without specific complaints about unlawful discrimination does not constitute a protected activity.  Barber v. CSX Distrib. Servs., 68 F.3d 694, 701 (3d Cir. 1995).  Plaintiff admitted that he made complaints to Sterner about Wolf but never expressed to her that Wolf's treatment was a result of discrimination.  He made general complaints that Wolf was giving him "problems."  These complaints do not constitute a protected activity and Plaintiff has failed to demonstrate the first element of his retaliation claim.

*IV.*        *Conclusion*

For the reasons set forth above, Defendant's motion for summary judgment will be granted.

We will issue an appropriate order.


              /s/William W. Caldwell
              William W. Caldwell
              United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANJAY BHANU,<br>    Plaintiff | :<br>:<br>: |
| vs. | : CIVIL NO. 1:11-CV-1160<br>: |
| SNYDERS OF HANOVER,<br>    Defendant | :<br>:<br>: |

*O R D E R*

AND NOW, this 6th day of November, 2012, upon consideration of Defendant's motion for summary judgment (doc. 18), and Plaintiff's response thereo, and pursuant to the accompanying Memorandum, it is ORDERED that:

   1.  Defendant's motion for summary judgment (doc. 18) is GRANTED.

   2.  The Clerk of Court shall enter judgment in favor of Defendant and against the Plaintiff, and shall close this file.

     /s/ William W. Caldwell
     William W. Caldwell
     United States District Judge

16